We're going to move now to Appeal 21-1804, Olawole Oluwajana v. Garland. We have one counsel who's going to be appearing in person. Mr. Pollack, you can come on up. And then we also have one counsel, is it Mr. Leist? Yes, Leist. Thank you. Mr. Leist is appearing remotely. And we're going to begin first with argument from the appellant, Mr. Pollack. Good morning. May it please the court, my name is Scott Pollack. I'm representing the petitioner Olawole Oluwajana. Our appeal has raised several objections to the proceedings below in front of an immigration judge in removal proceedings, as well as to the proceedings before the Board of Immigration Appeals on appeal. Mr. Oluwajana was attempting throughout his agency hearings to secure counsel. He was unsuccessful before his final hearing in front of the second immigration judge that heard his case. And at the first hearing, he did not have counsel. He received an extension or a continuance to obtain counsel. At the second hearing before the same immigration judge, DeAngelis, he appeared with counsel that his family had secured for him, but that counsel withdrew in the hearing and there were no substantive proceedings. The judge asked Mr. Oluwajana, did he know that counsel sought to withdraw his representation? He said no. The judge then said, do you want to proceed without counsel or try to secure counsel? He said he wanted his family. He wanted to talk to his family so that they could get him a lawyer. He then appeared a third time in front of a new immigration judge, and that immigration judge proceeded to note that he was appearing without an attorney. He asked Mr. Oluwajana, are you ready to proceed with your case? And Mr. Oluwajana answered affirmatively, yes, sir. But the judge did not ask him whether he wanted to proceed without counsel. He did not ask Mr. Oluwajana why he didn't have counsel with him. Or about any efforts. He simply did not secure a knowing and intelligent waiver of counsel at that hearing. Rather, he went forward and went on to the merits. He did ask Mr. Oluwajana, do you have a fear of returning to Nigeria? Mr. Oluwajana said, yes, I do. There was an exchange, a little bit of information given about the nature of his fear. The judge then had a conversation with the government's attorney as to whether or not those very sort of truncated, succinct answers would result in a claim for political asylum or withholding of removal or protection under the Convention Against Torture, the various humanitarian reliefs that are available to persons in removal proceedings. They concluded, well, the government's attorney said, I don't think he has a claim. And the judge then went on to the substance of the case, whether he was removable on the basis of his criminal convictions. The judge did ask him, well, what do you have to say about these convictions? And Mr. Oluwajana said, well, I don't really have much to say. And the judge then interjected that, well, I understand that these are complicated legal questions. I just wanted to give you an opportunity to tell us what you might have to say. The judge then adjourned the proceedings and said, we will notify you several months later. The judge decided that Mr. Oluwajana was removable on account of his criminal convictions that the judge found were aggravated felonies under the immigration laws. And Mr. Oluwajana then took a pro se appeal to the Board of Immigration Appeals. While that appeal was pending, his family retained my law office to represent him. We did not have the transcript of proceedings. We didn't know what happened other than what Mr. Oluwajana related to us. And we immediately filed a Freedom of Information Act request for the transcripts. We followed up with the Executive Office for Immigration Review several times, asked them to expedite their processing of our FOIA request, because we needed the file in order to first enter our appearance and then answer the judge's decision on appeal. We were unsuccessful. We did enter our appearance with the Board of Immigration Appeals and asked them to produce the transcript for us to do an appeal brief. The board did not produce the transcript. They set a briefing schedule, gave us an initial period of time. We did not have the file in order to assess the case, so we asked for one extension of time on the brief, which was granted. Then that period was ending, and we still did not have the transcript of proceedings in order to assess possible claims that he would have on appeal. We submitted a second motion for additional time to file the brief, and the board denied that request, saying they had already granted one extension and we had not shown extraordinary circumstances for a second extension. Let me accelerate you then, because it sounds like we've got an agreement between the parties for a remand. We do. Do you want to speak to the nature of the directions you're seeking on remand? Yes, thank you. The government has asked repeatedly for a general remand in order for the Board of Immigration Appeals to further explain its position on why it rejected our late filed brief and why it did not consider the various arguments, which are a denial of the right to counsel and a violation of the regulations that require a judge to notify someone who has asserted a fear of returning to their country to provide them with the information that they have a right to apply for asylum and associated relief that the judge must give the form to the respondent in removal proceedings in order to assist to make the claims and also notify of the privilege of being represented by counsel. Our position is that had the judge adhered to the regulation 8 CFR section 1240.11c1 in very clear terms, we would not be here today. Mr. Olawodjana would have been re-advised of his right to counsel. He would have had an opportunity to fill out the form and he would have proceeded on his claims. So given that, given that there's an agreement that the case is going to go back, are there particular requests that you have about the nature of the remand? Yes, we would like the court to order the board to remand to the immigration judge for a do-over in this case. I think it's appropriate because the record is clear that the judge did not obtain a knowing waiver of Mr. Olawodjana's right to counsel and clearly did not adhere to the regulation that I cited. I think the only, there is the other question of whether the, you know, the government's position I believe is they want the board to reconsider our motion for a late-filed brief. Our position is it's best if we make these arguments directly to the immigration judge in order to secure his rights. The only thing I want to clarify is that for all of this time, he remained in the country and he was not deported. Correct. It's a long, dragged-out process, but he's still around. While the case is on appeal to the Board of Immigration Appeals, there is not a final removal order, so there's no administrative order against him yet. And then when we appealed to the Seventh Circuit, we moved for a stay of removal, which the government did not object to. And currently there is an order of this court that he not be removed during the pending proceedings. Is he detained still? Yes, he is. Thank you, Mr. Pollack. Thank you very much. Mr. Leist, we are now going to move to you for argument on behalf of the appellee. May it please the Court, my name is Jeffrey Leist. I'm appearing on behalf of the Attorney General. The Court should remand the proceedings back to the Board of Immigration Appeals so that the Board may reconsider its denial of the petitioner's motion for leave to file a late-filed brief. The Board's decision does not actually grapple with the reasons set forth in the motion and, moreover, is based on a factual error, considering its calculation of the degree of lateness of the motion in the brief. This Court has held in Coney v. Holder that remand is proper for additional analysis if the Board has not adequately explained its result, and it seems possible that the agency might be compelled to reach the opposite conclusion depending on how it evaluates the record after remand. Mr. Leist, Mr. Pollack is asking for not just a general remand but a remand down to the IJ for a do-over. What is your position on that? Our position is that the case should go back to the Board to reconsider the denial of the motion to accept the late-filed brief. We would be opposed to sending the case all the way back to the immigration judge because the Board has not yet spoken to the due process claims raised in the brief because it rejected the brief. This Court's decision in Dockage is pretty much on point. That case involved the positions of the parties were essentially reversed. In that case, it was the petitioner who was arguing that the Board's denial of a motion to accept a late-filed brief lacked the essential analysis, and the Court agreed. The Court noted that the Board may reject a tardy brief, but it must provide an explanation showing that it considered the arguments and did not merely react to them. And the Court remanded for the Board to do so, but it did not, as the petitioner requests here, essentially remand for the Board in order for the Board to consider the brief. The Court noted that the petitioner's claim regarding the motion to late-file the brief may have some merit to it, but it declined to actually order the Board to consider the late-file brief because that was a determination within the province of the Board. But it held that the Board was required to consider the relevant factors and explain its decision in light of them. That's what's lacking here, Your Honor. Mr. Leist? Yes. But we also have the WGA Sessions case, which requires some sort of persuasive reasons that justify a general remand when a petitioner objects, as we have here. We have a petitioner who objects to a general remand. What would give us the confidence that the Board would do anything differently if we were to remand for them to reconsider this denial of the late brief? They already had the law before them that required them to explain why they were rejecting a late brief, required them to consider the petitioner's arguments about why the brief is late, they had the calendar in front of them, they could have correctly calculated the days. So what would justify sending it back to them when there's no new law or facts here that needs to be inputted into a new analysis for the Board? I think it's because the Board simply has not engaged in that analysis. There's no indication from the Board's decision itself that it actually considered the evidence and the arguments raised in the motion. And because it's a discretionary determination by the Board and the Board's only real analysis here deals with the lateness of the brief, which is simply based on a mathematical miscalculation, sending it back to the Board for a proper consideration, you know, explication of the actual factors it's considering and reconsideration in light of what appears to be the main driving force here was that the brief was allegedly 33 days late when it was only 12 days late. Well, it wasn't just a mathematical calculation. They also said we're going to deny this late brief because we already gave you one extension and then we did tell you, you know, you could file a late brief and ask for relief then, but since we already denied you once, we're going to deny you twice. So there was something more than just mathematics involved? Yes, but the Board doesn't actually explain what's going into its decision. It just says that, you know, it was denied, your second extension motion was denied and your brief is 33 days late. It does not actually grapple with any of the reasoning set forth in the motion. But from a judicial economy standpoint, if they just do what you're asking them to do, give a more robust reason for denying, which they very well could do, they could just come back and say, yeah, we still want to deny it. Here's some extra reasons why. Here's a better explanation. Won't we be right back here again in front of this Court? Well, I think that was also the issue in the Codge, which is that in that case, the Board did not expressly discuss the evidence in support of the motion. And the Court remanded for the Board to do so. And it noted that it was possible that the Board could deny a motion, but it was important that the Board actually give it sufficient process and actually demonstrate that it had actually considered the arguments, not merely reacted. So I think that because the Board has not done so in this case, when coupled with the fact that it's a discretionary determination, and the Board seems to have heavily weighed something, which simply was inaccurate, sending it back for the Board to reconsider that. It is possible they could deny it again, Your Honor, but it's also possible that they could grant it. That if, you know, the one thing that they talked about specifically is the lateness of the brief. If that's simply incorrect, it is entirely possible that the Board upon further reflection, and after actually expressly considering the evidence and the arguments raised in the motion, that the Board could come to a contrary conclusion and could grant the evidence and decide the issues raised in the petitioner's brief. There's a middle ground that neither of you have asked for, which is, well, petitioner did ask, but only on the briefs. Something more than a general remand, but less than sending it all the way back down to the IJ. So it's an order to the Board to just accept the late brief, and then go straight to ruling on the merits at the Board level. Is that for you at least preferable to the other alternative petitioner is asking for? It's preferable. Remanding all back to the way to the immigration judge is just not appropriate. DeKalb also speaks to that. You know, because the Board did not actually address any of the arguments in the brief, it has to be given the opportunity to do so. So to send it all the way back to the immigration judge and essentially decide that the issues raised are valid enough that, you know, a further remand is warranted kind of cuts out the step of the Board. And that's what happened in DeKalb. DeKalb, the Court held that, you know, because the Board had not spoken to the issues in that brief, it was not going to do so. So we would be opposed completely to remanding all the way to the immigration judge. We would also be opposed to remanding with the instructions because again, in DeKalb, the Court held, you know, it may be entirely possible that the reasoning provided is persuasive, but they declined to actually order the Board. That's because in DeKalb there were unresolved factual disputes. Here, there are no unresolved factual disputes about the facts surrounding the late brief. It's just that the Board got the math wrong and ignored the facts, but there are no factual disputes between you and the petitioner here like there were in DeKalb that this Court wanted the Board to contend with. I mean, to the extent that the petitioner, the mathematical calculation is a factual dispute. I mean, if the Board simply got it wrong on that issue, we would again request the Board be given the opportunity to actually correct that error and to engage in the proper analysis. So, you know, the Board simply has not spoken to any of the factors and explained why that was not sufficient and it's the government's position that the Board should be given the opportunity to do so. And if in the event that the Board actually finds that the evidence and arguments were sufficient and accepts the brief, that is perfectly fine. And then the Court can address the due process claims after the Board has done so. Thank you, Mr. Leist. Thank you, Mr. Pollack. The case we take on our advisement, we appreciate the argument of both parties.